United States Court of Appeals
Fifth Circuit

**F I L E D**

March 9, 2007

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-50110

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ROBERT R. BRITTON, JR.; ROBIN GATEWOOD,

Defendants-Appellants.

Appeal from the United States District Court
For the Western District of Texas

(7:05-CR-138-3)

Before REAVLEY, DeMOSS, and BENAVIDES, Circuit

Judges.

PER CURIAM:[*]

---

[*]Pursuant to 5th Cir. R. 47.5, the Court has
determined that this opinion should not be published and

Defendants-Appellants Robert Britton and Robin Gatewood were indicted and tried together for their involvement in a conspiracy to sell cocaine base ("crack") in Midland, Texas. A jury convicted each appellant of conspiracy to possess and distribute fifty grams or more of crack (count one) and aiding and abetting each other to possess with the intent to distribute 500 grams or more of powder cocaine (count three). Gatewood was additionally convicted of aiding and abetting two others in the possession with intent to distribute five or more grams of crack (counts four and nine). The district court sentenced Britton to 188 months imprisonment. Gatewood received four concurrent life sentences. Each appellant raises one point of error.

---

is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

## I.

Police in Midland, Texas conducted an exhaustive investigation into a drug ring they suspected was distributing crack cocaine in 2004 and 2005. The investigation revealed at least eight individuals were involved in the conspiracy; some purchased powder cocaine and turned it into crack, and others distributed it in and around Midland. Following the conclusion of the investigation, a grand jury returned an eleven count indictment against, among others, Britton and Gatewood.

Britton's involvement in the conspiracy is not materially disputed on appeal. At trial, co-conspirator Carmellia Price, who previously pled guilty, testified that Britton primarily served as a driver for Gatewood and other co-conspirators. She recalled a number of instances when Britton provided rides in exchange for crack. In particular,

she testified that Britton drove Gatewood and herself to Lubbock to buy cocaine on at least one occasion. In April 2005, officers questioned Britton and he admitted traveling to Lubbock with Gatewood in 2004 to pick up two kilograms of cocaine.

Co-conspirator Price further testified she began buying crack from Gatewood around June 2004. She also stated she sold crack for Gatewood, sometimes in quantities of more than three-quarters of an ounce per week (approximately 21 grams). Further, she witnessed Gatewood sell crack to others on numerous occasions, including one transaction involving a Crown Royal bag containing a considerable amount of crack.

Twakeshia Howard, another co-conspirator who pled guilty and testified at trial, stated that she also sold crack obtained from Gatewood. She would obtain crack from

Gatewood worth $200 to $300 several times per week to re-sell. She also testified that she occasionally traveled to Lubbock with Gatewood and Britton to buy cocaine. Co-conspirators John Smith and Shanskurria Sheppard gave similar testimony. Each obtained crack from Gatewood to re-sell, and each recounted various drug deals they witnessed involving Gatewood. Another drug dealer, Nigel Harris, testified that he witnessed Gatewood purchase 250 grams of powder cocaine on one occasion.

In addition to testimony concerning the Appellants' involvement, the government presented evidence to establish the existence and scope of the conspiracy, the quantity and type of drugs seized during the investigation, and the conversion ratio of powder cocaine to crack.

At sentencing, the district court attributed to Britton 1.5 kilograms of crack for his role in the conspiracy, based

on the fact Britton admitted to picking up two kilograms of powder cocaine.

## II.

On appeal Britton challenges the district court's finding that two kilograms of powder cocaine translates into 1.5 kilograms of crack for sentencing purposes. "This Court reviews for clear error a district court's factual determination regarding, for sentencing purposes, the quantity of drugs used to establish a base offense level. . . ." *United States v. Turner,* 319 F.3d 716, 724 (5th Cir. 2003). Such a finding is clearly erroneous if it is not plausible "in light of the record as a whole." *Id.* (quoting *United States v. Johnston*, 127 F.3d 380, 403 (5th Cir. 1997)).

The district court is required to find the quantity of drugs by a preponderance of the evidence. *Johnston*, 127

F.3d at 403. Britton admitted obtaining two kilograms of powder cocaine in Lubbock. Consequently, Britton does not challenge the district court's finding that two kilograms of powder cocaine are attributable to him; he merely challenges the ratio used by the court to equate the powder cocaine to crack.

Equating a quantity of cocaine to crack for sentencing purposes is allowed by the guidelines, and Britton has not challenged on appeal the fact the court did so. *See United States v. Booker*, 334 F.3d 406, 414 (5th Cir. 2003) ("Conversion of powder cocaine to crack cocaine for sentencing purposes is permissible if such conversion was foreseeable to the defendant.").

No evidence was presented concerning how much crack was actually produced from the powder cocaine purchased in Lubbock. So to determine the proper

7

conversion ratio, the PSR writer relied on testimony from several police officers who stated that two kilograms of powder cocaine can be made into four kilograms of crack (a 1 to 2 ratio). Nigel Harris, the admitted drug dealer who testified at trial, also estimated a conversion ratio of 1 to 2.

The PSR adopted this estimate. However, the district court did not adopt the PSR's conversion ratio and instead attributed 1.5 kilograms of crack to Britton for his role in the conspiracy (a 1 to .75 ratio).

We find the district court's conversion ratio (1 to .75) to be a reasonable estimate based on the testimony, and hold it did not constitute clear error. The ratio was lower than all of the conversion ratios presented at sentencing, except one. While the ratio used here was higher than in *United States v. Booker*, 334 F.3d 406, 414 n.3 (5th Cir. 2003) (mentioning a 1 to .5 ratio), that case did not

establish the correct ratio as a matter of law. *See id.* at 413-14 & n.3. The ratio in *Booker* was not an issue and the court merely mentioned the ratio in a footnote. *See id.* at 414 n.3.

Even if it was error to apply the 1 to .75 ratio as opposed to the 1 to .5 ratio from *Booker*, the sentence here is nonetheless presumed reasonable. The properly calculated guideline range using the *Booker* ratio (1 to .5) is 168 to 210 months. Because the 188-month sentence imposed by the court falls within this 168 to 210 range it is presumptively reasonable. *See United States v. Medina-Arguenta*, 454 F.3d 479, 483 (5th Cir. 2006) (holding that when a court "miscalculates the guideline range yet imposes a sentence that falls within a properly calculated guideline range, the sentence enjoys a presumption of reasonableness."). Britton has not overcome that

presumption. Thus, we find no error and affirm Britton's sentence.

In his appeal, Gatewood challenges the sufficiency of the evidence. After reviewing the briefs, record, and applicable law, we find that a rational jury could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Patterson*, 431 F.3d 832, 836 (5th Cir. 2005). Thus, we find no error and affirm. AFFIRMED.